UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY BREZOCZKY, Plaintiff, v. DOMTAR CORPORATION, et al., Defendants. | Case No.16-cv-04995-EJD (HRL) **ORDER RE: DISCOVERY DISPUTE JOINT REPORT #1** Re: Dkt. No. 51 |

Plaintiff Kelly Brezoczky ("Plaintiff") was a founder, CEO, majority shareholder, and Director of Butterfly Health, Inc., a company that sold a personal hygiene product. Dkt. No. 14, ¶¶ 1, 7. She contends that she and Defendant Domtar Corp. agreed to form a new entity, Butterfly Acquisition, LLC ("Acquisition") to purchase Butterfly Health. *Id.*, ¶ 6. Domtar, however, allegedly terminated the agreement and purchased Butterfly Health's assets on its own. *Id.*, ¶ 18. During this time, attorneys Brooks Stough and Candace Carlyon represented Plaintiff in her personal capacity. *Id.*, ¶¶ 81, 106. Plaintiff also asserts that she was represented "in her capacity as a member" of Acquisition by Defendant Polsinelli PC, the law firm that also represented Domtar. *Id.*, ¶ 10. Polsinelli denies that it represented Plaintiff. Dkt. No. 24, ¶¶ 10, 11. Plaintiff now sues Domtar (for breach of fiduciary duty and breach of contract) and Polsinelli (for breach of fiduciary duty and professional negligence) related to these events.

In Discovery Dispute Joint Report No. 1, Polsinelli requests that the court compel the disclosure of attorney-client privileged communications between Plaintiff, Stough, and Carlyon. Dkt. No. 51. Polsinelli asserts that Plaintiff has impliedly waived the privilege as to these communications by putting them at issue. *Id.* For the following reasons, the court concludes that Plaintiff has not waived the privilege and denies Polsinelli's request to compel disclosure.

**DISCUSSION**

Federal jurisdiction in this action is premised on diversity of citizenship. Dkt. No. 14, ¶ 25. As such, state law governs privilege in this action. *See* Fed. R. Evid. 501. In California, implied waiver of attorney-client privilege can be established "by demonstrating that the client has put the otherwise privileged communication directly at issue and that the disclosure is essential for a fair adjudication of the action." *S. Cal. Gas Co. v. Pub. Utils. Comm'n*, 50 Cal. 3d 31, 40 (1990). Neither party recites this standard, each instead invoking the similar Ninth Circuit standard: "An implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Seaman v. Sedgwick, LLP*, No. SA CV 11-0664-DOC (RNBx), 2014 WL 3738055 (C.D. Cal. July 28, 2014); *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 468 (N.D. Cal. 2006). Under either standard, Plaintiff has not waived the privilege.

In general, the doctrine of implied waiver ensures that the party invoking the privilege does not gain an unfair advantage by asserting claims the opposing party cannot combat without access to the privileged documents. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 241 (N.D. Cal. Apr. 3, 2015). As some courts have stated, implied waiver prevents parties from using the privilege "both as a sword and a shield." *Chevron Corp. v. Pennzoil*, 974 F.2d 1156, 1162 (9th Cir. 1992).

Polsinelli argues that Plaintiff put her communications with Stough and Carlyon at issue by bringing her claims for professional negligence and breach of fiduciary duty. More specifically, Polsinelli asserts that where a client is represented by more than one attorney, a malpractice inquiry "necessarily involves information communicated" between the client and all attorneys involved in the representation. Dkt. No. 51, citing *Pappas v. Holloway*, 787 P.2d 30 (Wash. 1990). Polsinelli also argues that Plaintiff waived the privilege as to communications between her and her individual counsel by making allegations about the scope of the representation her counsel provided. Finally, Polsinelli points to several specific communications that Plaintiff alleges she exchanged with her counsel, arguing that Plaintiff cannot make specific allegations about

2

communications and then refuse to disclose them. Dkt. No. 51.

Plaintiff did not place her communications with her individual counsel at issue simply by asserting claims for professional negligence and breach of fiduciary duty.

First, the court is not persuaded by Polsinelli's argument that the communications are at issue because they relate to the existence and scope of an attorney-client relationship between Plaintiff and Polsinelli.[1] Attorney-client relationships may be express or implied. If implied, their existence and terms are manifested by "the intent and conduct of the parties." *Zenith Ins. Co. v. Cozen O'Connor*, 55 Cal. Rptr. 3d 911, 920 (2007). A client's subjective belief in the existence of an attorney-client relationship is insufficient to bring one into being. "This is because a plaintiff cannot unilaterally establish an attorney-client relationship[.]" *Id.* As a result, the state of mind of the possible client, "unless reasonably induced by representations or conduct of" the attorney, will not evidence an attorney-client relationship. *Fox v. Pollack*, 181 Cal. App. 3d 954, 959.

To prove that an attorney-client relationship existed, Plaintiff must point to representations and/or conduct by Polsinelli and between her and Polsinelli. Communications between Plaintiff and Stough/Carlyon in which Polsinelli had no part *may* contain evidence of Plaintiff's subjective beliefs or her attorneys' opinions about whether a relationship existed, but such beliefs and opinions cannot establish the existence or absence of an attorney-client relationship.[2] Because Polsinelli is not involved in these communications, the court is skeptical about whether they could help Plaintiff prove the existence of an attorney-client relationship. In any event, Plaintiff has not indicated any intent to rely on these communications. *See Rhone-Poulenc Rover Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant matter. The advice of counsel is placed in issue where the client . . . attempts to prove [a] claim or defense by disclosing or describing an attorney

---

[1] In discussing this issue, the court states no opinion about whether an attorney-client relationship existed. Such a question is beyond the scope of this discovery dispute. This statement also applies to the other merits-related issues to which this order refers.

[2] It would, of course, be helpful to Polsinelli if Plaintiff confessed to Stough/Carlyon that she knew no relationship existed between her and Polsinelli. But the possible existence of such a statement does not mean that Plaintiff has impliedly waived the privilege.

3

1  client communication."). The court is thus persuaded that Plaintiff has not put her
2  communications at issue for this purpose. For the same reasons, Plaintiff's statements about the
3  scope of Stough and Carlyon's representation also do not put her communications with those
4  attorneys at issue. Unless Plaintiff intends to rely on those statements to affirmatively prove the
5  existence of a relationship with Polsinelli, communications with her personal counsel in which
6  Polsinelli was not involved are not placed at issue simply because Plaintiff filed a malpractice
7  claim against Polsinelli.

8  Second, Polsinelli's argument that Plaintiff's malpractice claim necessarily places communications between Plaintiff and all attorneys involved in the subject transaction at issue (because such communications are relevant to issues of breach and causation) also fails. In making this argument, Polsinelli relies on *Pappas v. Holloway*, in which the court held that the client suing its attorney for malpractice related to unsuccessful litigation waived the privilege as to communications with all other attorneys who represented the client in the same matter. 787 P.2d 30, 37 (Wash. 1990). The inquiry into whether the defendant-attorney breached its duty would "involve examining decisions made at various stages of the underlying litigation," the court reasoned, which would "necessarily involve information communicated" between the other attorneys and the client. *Id.* The present case is distinguishable. Of course, causation and breach are still elements of professional negligence in the transactional context. *Viner v. Sweet*, 30 Cal. 4th 1232, 1240-41 (2003). But in *Pappas*, all of the attorneys had the same role and the same client. Here, Stough/Carlyon represented Plaintiff in her personal capacity, while Polsinelli represented Plaintiff (if at all) in her capacity as a member of Acquisition. *See* Cal. Corp. Code Section 17701.04(b) (discussing members of an LLC prior to formation). The court is not persuaded that an individual who files a claim of professional negligence or breach of fiduciary duty against an attorney places at issue communications with other attorneys responsible for representing different interests—and, in certain respects, a different client.

In addition to arguing that Plaintiff's claims as a whole put her communications at issue, Polsinelli also points to several specific allegations that it asserts achieve the same effect.

Plaintiff did not place any communications with her counsel at issue by alleging that she

4

forwarded Polsinelli's purported legal advice contained in a March 31, 2016, e-mail to her individual counsel (*see* ¶¶ 130-135 in the first amended complaint). Plaintiff does not indicate anywhere that she intends to rely on these communications to support her claims. Indeed, Plaintiff's allegations expressly state that she "did not confer with her individual counsel" as to the issues involved. Plaintiff is not using the privilege as a sword here; she may use it as a shield.

Plaintiff does place particular communications with her counsel at issue in two specific instances. First, she alleges that she e-mailed the following statement to a group including a Polsinelli agent on March 29, 2016: "My counsel worked with me as we were developing the proposal with Domtar, but is deferring to [a Polsinelli attorney] on the [sale of Butterfly Health]." Dkt. No. 14, ¶ 116. Second, she alleges that Carlyon informed her that Polsinelli stated that "it did not believe Domtar was 'totally on board with the deal.'" *Id.*, ¶ 148. In both of these instances, Plaintiff discusses the *content* of communications with her individual counsel, placing the communications at issue. In neither case, however, has Polsinelli demonstrated that disclosure of these specific communications is either essential for a fair adjudication of the action or vital to Polsinelli's defense. In the first instance, the thrust of Plaintiff's allegation is not her counsel's reason for deferring to Polsinelli, but the fact that Polsinelli was allegedly aware of (and allegedly approved) Plaintiff's state of mind as to the division of responsibilities. *See* Dkt. No. 14, ¶¶ 117, 118. In the second instance, the communication at issue concerns information Polsinelli already possesses—its own statements. Neither instance supports implied waiver of the privilege.

## CONCLUSION

For the reasons described above, the court denies Polsinelli's request to compel disclosure of Plaintiff's communications with Stough and Carlyon.

**IT IS SO ORDERED.**

Dated: 8/15/2017

HOWARD R. LLOYD
United States Magistrate Judge

5