United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KELLY BREZOCZKY,<br><br>    Plaintiff,<br><br>  v.<br><br>DOMTAR CORPORATION,<br><br>    Defendant. | Case No. 5:16-cv-04995-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 63, 78 |

Plaintiff Kelly Brezoczky alleges that she formed a joint venture agreement with Defendant Domtar Corporation and that Domtar later breached that agreement. Domtar now moves for summary judgment on all of Brezoczky's claims. Brezoczky moves for summary judgment on Domtar's fifth affirmative defense, which asserts that Brezoczky failed to mitigate her damages.

Domtar's motion will be granted. Brezoczky's motion will be denied.

**I.   BACKGROUND**

In 2011, Brezoczky founded Butterfly Health, Inc. ("Butterfly 1"), which developed products to protect against accidental bowel leakage. Def.'s Reply Separate Statement ("RSS") ¶¶ 92–93, Dkt. No. 81. By early 2016, the company was in financial distress, and Brezoczky was exploring ways to wind it down. Id. ¶ 94.

In February 2016, Brezoczky asked Domtar to partner with her to make a stalking horse bid for Butterfly 1's assets in a bankruptcy auction. Id. ¶¶ 95–97. After a series of phone calls and email exchanges, Brezoczky and Domtar executed a letter of intent ("LOI") on March 28, 2016.

Id. ¶¶ 99–110; LOI, id. Ex. 1, Dkt. No. 14-1. The LOI proposed that Brezoczky and Domtar would form a new entity—Butterfly Acquisition, LLC ("Butterfly 2")—that would make a bid to acquire Butterfly 1's assets. RSS ¶¶ 99–110.

On April 30, 2016, Domtar told Brezoczky by phone that it intended to terminate the LOI. Id. ¶ 20; Def.'s Mot. for Summ. J. ("MSJ") 7, Dkt. No. 63; Pl.'s Cross-Mot. for Summ. J. ("Cross-MSJ") 10, Dkt. No. 78. Written termination followed on May 2, 2016. RSS ¶ 20; MSJ 7; Cross-MSJ 10. In June 2016, Domtar—without Brezoczky or Butterfly 2—acquired Butterfly 1's assets at auction. RSS ¶ 121. Brezoczky filed this action in August 2016, in which she brings claims against Domtar for (1) breach of fiduciary duty and (2) breach of contract. First Am. Compl. ("FAC") ¶¶ 180–95, Dkt. No. 14.

Domtar now moves for summary judgment on both of Brezoczky's claims. Brezoczky also moves for summary judgment on Domtar's fifth affirmative defense for failure to mitigate damages.

## II. LEGAL STANDARD

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Samuels v. Holland American Line—USA Inc., 656 F.3d 948, 952 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). The Court "must draw all reasonable inferences in favor of the nonmoving party." Id. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. DISCUSSION

The parties' dispute centers on whether Domtar and Brezoczky entered into a contract to pursue a joint venture. "Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." Bustamante v. Intuit, Inc.,

Case No.: 5:16-cv-04995-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
2

141 Cal. App. 4th 199, 209 (2006) (quoting Ersa Grae Corp. v. Fluor Corp., 1 Cal. App. 4th 613, 623 (1991)). "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." Id. (quoting Ladas v. Cal. State Auto Ass'n, 19 Cal. App. 4th 761, 770 (1993) and Robinson & Wilson, Inc. v. Stone, 35 Cal. App. 3d 396, 407 (1973)). However, "[w]here a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." Id. (quoting Cal. Lettuce Growers v. Union Sugar Co., 45 Cal. 2d 474, 481 (1955)).

Section 7 of the LOI states that the LOI is not a binding agreement:

> No Contract. It is expressly understood that this LOI (except for Sections 3 through 9[1] hereof, to which the parties intend to be bound and for which each acknowledges that adequate consideration has been given) is not intended to be, and shall not be construed to be, a binding commitment, agreement or contract and that neither Buyer nor Seller shall be entitled to any recourse, in the form of damages, equitable relief or otherwise, for expenses incurred or benefit conferred or lost before or after the date first written above in the event that there is a failure, for whatever reason, of Buyer and Seller to agree on any term or terms and/or provisions of a definitive purchase agreement.

LOI 4 (emphasis added). In addition, section 9 provides that either party may unilaterally terminate the LOI:

> Termination. This LOI may be terminated without any obligation or liability to any party hereto (a) at any time, by the mutual agreement of Buyer and Seller, (b) by either of Buyer and Seller at any time after April 15, 2016 or (c) by Seller if Seller determines in good faith (after consultation with its outside counsel) that entering into definitive agreements regarding the Transaction on the terms outlined herein would reasonably be expected to be a breach of its fiduciary duties under applicable law.

LOI 5. As such, the LOI cannot form the basis of a binding joint venture agreement between Brezoczky and Domtar.

---

[1] Sections 1 and 2 describe the terms of the proposed transaction.

Case No.: 5:16-cv-04995-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
3

Instead, Brezoczky argues that she entered into a separate oral contract with Domtar to pursue a joint venture. Cross-MSJ 10–12. Although the alleged oral agreement was never committed to writing, Brezoczky argues that section 2 of the LOI reflects its terms, "including the structure and governance of Butterfly 2, her ownership interest, and Domtar's ability to buy her out at its discretion if Butterfly 2 hit certain milestones." RSS ¶ 28. As discussed above, section 7 provides that section 2 "is not intended to be . . . a binding commitment, agreement, or contract." LOI 4. Brezoczky appears to argue that, while the LOI itself is not binding, the terms of section 2 are enforceable because they represent the substance of a separate oral agreement between her and Domtar.

Brezoczky explains that a joint venture agreement "requires little formality" and "may be formed by oral agreement." Cross-MSJ 10 (citing Pepper, N.A. v. Expandi, Inc., No. 15-cv-04066-NC, 2016 WL 1611039, at *2 (N.D. Cal. Apr. 22, 2016) and Nelson v. Abraham, 29 Cal. 2d 745, 749–50 (1947)). She alleges several facts to support her position that she and Domtar entered into an oral contract that was separate from the LOI. In October 2015, she met Mike Fagan, President of Domtar's Personal Care Division, at an industry conference. Cross-MSJ 4. In February 2016, she called Fagan "to inquire whether Domtar would be interested in participating as her strategic partner in a stalking horse bid for § 363 sale acquisition of Butterfly 1." Id. Fagan replied that Domtar would only be interested in making a bid if Brezoczky were involved, and that " 'Domtar would never consider getting in the business' without her." Id.

Brezoczky alleges that on February 26, 2016, she participated in a conference call with "Fagan and others at Domtar to discuss their approach to acquire Butterfly 1's assets in a § 363 sale." Id. at 5. On March 4, 2016, she emailed Steve Makris, Domtar's Vice President of Strategy and Innovation, to ask for an outline of how he viewed their proposed partnership. Id. He replied:

> I'll send bullets in the morning my time, building around our key objectives:
>
> 1. Create a unique and meaningful partnership together with you in Butterfly 2, built on what we each bring to the venture, and I'll

Case No.: 5:16-cv-04995-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
4

detail Domtar's investment, capabilities, scale, and desire to have a
                    controlling interest;

                    2. Structured with incentives & alignment to jointly build B2 to
                    reach its full potential; and

                    3. Having a clear path to full Domtar ownership, at a prescribed
                    milestone in B2's business development.

Id. Brezoczky alleges that "discussions with Makris and Fagan advanced through March 14, 2016, by which time she and Domat [sic] had orally reached a joint venture agreement." Id.

In March and April, Fagan and others at Domtar "reiterated on multiple occasions that [Brezoczky's] involvement was essential in the effort to acquire Butterfly 1's assets." Id. at 4. Brezoczky obtained approval for the proposed transaction from Butterfly 1's senior secured lender, City National Bank ("CNB"), after which Fagan wrote to Brezoczky: "Yeah!!! Congrats! 1st step now we have to see it thru to close and scale it the way we both know is possible!" Id. at 4, 6.

Domtar and Butterfly 1 executed the LOI on March 28, 2016. Id. at 5, 7. According to Brezoczky, the LOI "memorialized their joint venture agreement" that had previously existed in the form of an oral agreement. Id. at 5. The parties, she argues, "still had an oral agreement and nothing in the LOI can be read to the contrary." Id.

Around April 12, 2016, Domtar's counsel indicated to Brezoczky's counsel that "he believed Domtar was not 'totally on board with the deal.' " Id. On April 19, 2017, Makris left Brezoczky a voicemail message in which he said:

                    I'm sure there must be some misunderstanding, confusion. But
                    please give me a call when you have a moment and let's talk. But,
                    no wavering one iota on commitment to build the partnership. I
                    don't know, I haven't get to talk to Chris or Ania yet.

Id. at 8. He followed up with text messages that read: "My message from earlier was that Domtar is 100% committed to the LOI and getting the deal done. . . . Our CEO is fully supportive and you know how Mike and I feel. We are very excited to be your partner in Butterfly 2!!" Id. at 8–9.

However, despite its earlier enthusiasm, Domtar terminated the LOI on May 2, 2016. Id. at

Case No.: 5:16-cv-04995-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
5

9. In June 2016, Domtar acquired Butterfly 1's assets at auction. RSS ¶ 121. According to Domtar, it was unable to continue negotiations with Brezoczky because her "demands . . . moved far afield of what the parties contemplated in their non-binding Letter of Intent," and because she engaged in "a pattern of . . . self-dealing in violation of her obligations to other parties." Letter from Domtar's Counsel on August 22, 2016, at 1, Dkt. No. 14-10. Domtar claims that Brezoczky "made numerous misrepresentations about [Butterfly 1]" and "chose to pursue her own interests, at the expense of the company where she was an officer and director with obligations to shareholders and creditors." Id. As a result, Domtar chose to exercise its right under section 9 to terminate the LOI.

The Court finds that Brezoczky's evidence does not establish the existence of an oral joint venture agreement. Domtar's statements show that it was eager (at first) to pursue a partnership with Brezoczky. From February through April 2016, Brezoczky and Domtar discussed the terms of the proposed partnership, and they agreed to memorialize those terms in the LOI. But none of Domtar's statements show that a binding partnership agreement was ultimately formed. Rather, Domtar's statements are consistent with its position that it reached a tentative agreement with Brezoczky regarding the terms of a possible partnership. The LOI explicitly provided that it was nonbinding and that Domtar could unilaterally terminate it if negotiations broke down. That is what happened here, according to the evidence on the record—and no evidence plausibly suggests that Domtar agreed, orally or otherwise, to give up its right to terminate the LOI.

Brezoczky also argues that Domtar is liable because it indicated to CNB (Butterfly 1's senior secured lender) that it would use "commercially reasonable efforts" to complete the transaction contemplated in the LOI. FAC ¶¶ 189–92; Cross-MSJ 20. Both Brezoczky and Domtar executed separate "Side Letter Agreements" with CNB to that effect on March 31, 2016. MSJ 8. Brezoczky's argument fails for two reasons. First, Brezoczky was not a party to the agreement that Domtar executed with CNB, and she has not established a basis to assert its terms against Domtar. Second, even if Brezoczky could assert a claim arising from Domtar's Side Letter Agreement, no

Case No.: 5:16-cv-04995-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

6

evidence suggests that Domtar failed to use "commercially reasonable efforts" to complete the transaction.

Domtar has established that there is insufficient evidence of a binding joint venture agreement between Brezoczky and Domtar, and that there is no genuine dispute of material fact on this issue. As such, Domtar is entitled to summary judgment on Brezoczky's breach-of-contract claim. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. . . . In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact.") (citations omitted). Domtar is also entitled to summary judgment on Brezoczky's claim for breach of fiduciary duty because that claim depends on the existence of a contractual relationship. FAC ¶¶ 180–85.

## IV. CONCLUSION

Domtar's motion for summary judgment (Dkt. No. 63) is GRANTED. Brezoczky's cross-motion for summary judgment (Dkt. No. 78) is DENIED AS MOOT. The Clerk shall close this file.[2]

**IT IS SO ORDERED.**

Dated: December 5, 2017

EDWARD J. DAVILA
United States District Judge

---

[2] Defendant Polsinelli PC was previously dismissed. Dkt. No. 72. Domtar's counterclaim was also dismissed. Dkt. No. 74. The only remaining claims are Brezoczky's claims against Domtar for (1) breach of fiduciary duty (FAC ¶¶ 180–85) and (2) breach of contract (FAC ¶¶ 196–95). Domtar's motion for summary judgment (Dkt. No. 63) disposes of those claims.